UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD et. al.,[1] | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Case No. 17-cv-02448 (APM) |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) ) |  |
| Defendant. | ) ) ) |  |

**MEMORANDUM OPINION**

Plaintiffs Mijente Support Committee and Detention Watch Network brought this action under the Freedom of Information Act ("FOIA") to obtain documents relating to a mass immigration enforcement operation that was planned by Defendant Immigration and Customs Enforcement ("ICE").  After several rounds of production, the sole question remaining in this case is whether ICE has appropriately redacted portions of a draft document entitled "Criminal Street Gangs Investigations Handbook," which ICE asserts are exempt from disclosure under FOIA Exemptions 5 and 7(E).  For the reasons that follow, the court concludes that the redactions were appropriately applied under Exemption 5.  The court therefore does not address the application of Exemption 7(E).  Accordingly, the court grants Defendant's Motion for Summary Judgment and denies Plaintiffs' Cross-Motion for Summary Judgment.

---

[1] Pursuant to a stipulation of voluntary dismissal filed on April 5, 2019, ECF No. 20, former plaintiff National Immigration Project of the National Lawyers Guild is no longer a party.

I.      BACKGROUND

Plaintiffs filed this FOIA action against ICE in November 2017 to compel the agency to produce records relating to a planned immigration enforcement action known as "Operation Mega" and any related immigration actions.   *See* Compl. for Declaratory and Injunctive Relief, ECF No. 1.   ICE produced records responsive to Plaintiffs' FOIA request throughout 2018 and early 2019.  *See* Def.'s Mot. for Summ. J., ECF No. 32 [hereinafter Def.'s Mot.], Decl. of Fernando Pineiro in Supp. of Def.'s Mot., ECF No. 32-2 [hereinafter First Pineiro Decl.], ¶ 6.   One of the documents produced was a 12-page "gang membership identification training course."  *Id.* ¶ 7; *see also* Def.'s Combined Reply Mem. in Supp. of Def.'s Mot. & Opp'n to Pls.' Cross-Mot., ECF No. 36 [hereinafter Def.'s Reply], Second Decl. of Fernando Pineiro in Supp. of Def.'s Mot., ECF No. 36-2 [hereinafter Second Pineiro Decl.], Ex. A.   The "12-page training document" listed two "Sources" for the course, including the "Gangs Handbook (Draft)," *see* Second Pineiro Decl., Ex. A, at PDF 21—also known as the "Criminal Street Gangs Investigations Handbook," the document which is the subject of the parties' present dispute, *see* First Pineiro Decl., Ex. 1, Criminal Street Gangs Investigation Handbook [hereinafter Draft Handbook].

According to ICE's Acting FOIA Officer, Fernando Pineiro, the Draft Handbook is a 48-page document dated April 10, 2017, which is "devoted to the investigations of criminal street gangs and reflects techniques, procedures and guidelines" regarding "the conduct, coordination, tracking, and funding of such investigations."  First Pineiro Decl. ¶¶ 9, 25.   The Draft Handbook consists of a Foreword, a Table of Contents, and twelve main chapters which are further divided into sub-chapters, and includes four appendices.  *Id.* ¶ 15.   It has a "DRAFT" watermark on each page, and contains redline changes and edits on some of the pages, as well as several comments by an employee of the ICE Office of the Principal Legal Advisor who was performing legal

sufficiency review of the draft at the time. *Id.*  It also includes a footer at the bottom of pages 2

through 48 stating that the draft is "FOR OFFICIAL USE ONLY / LAW ENFORCEMENT

SENSITIVE/ DRAFT/ DELIBERATIVE / PREDECISIONAL." *Id.* ¶ 14.  ICE later finalized the

Draft Handbook on August 13, 2018, *id.* ¶¶ 9–10 & n.3; however, Plaintiffs seek only the draft

version in this litigation.

ICE produced a redacted version of the Draft Handbook to Plaintiffs on November 14,

2019. *Id.* ¶ 9.  On November 25, 2019, the agency produced another version, which unredacted

"all information that was adopted from the 48-page draft Handbook into the 12-page training

document," Second Pineiro Decl. ¶ 6, along with other information "to the extent ICE determined

that the redacted information . . . pertained to information that had been released in other

documents produced in this litigation, including on other training documents and operational plan

documents related to gangs," First Pineiro Decl. ¶ 11.  In other words, ICE disclosed contents of

the Draft Handbook insofar as such material was reflected in trainings and other documents already

made available to Plaintiffs.  ICE produced one more version of the Draft Handbook on January

15, 2020, which removed some of the redactions on the titles of the chapters contained in the

Handbook, as well as content on two pages.  First Pineiro Decl. ¶ 12.

On the same day, ICE filed a Motion for Summary Judgment, asserting that the redacted

portions of the Draft Handbook were appropriately withheld pursuant to Exemptions 5 and 7(E).

*See* Def.'s Mot., Def.'s Mem. in Supp. of Def.'s Mot., ECF No. 32 [hereinafter Def.'s Mem.].

Plaintiffs filed a Cross-Motion for Summary Judgment on February 12, 2020.  *See* Pls.' Cross-

Mot. for Summ. J., ECF No. 34 [hereinafter Pls.' Cross-Mot.].  Plaintiffs assert that ICE has not

carried its burden of showing that (1) the redactions qualify under either exemption; (2) the agency

reasonably foresees that disclosure of the withheld information would harm an exemption-

protected interest; or (3) the agency has disclosed all segregable materials.  *See id.*, Pls.' Mem. in Supp. of Pls.' Cross-Mot. & in Opp'n to Def.'s Mot., ECF No. 34 [hereinafter Pls.' Mem.], at 4–14.  Briefing on the parties' cross-motions concluded on March 23, 2020.  *See* Pls.' Reply in Supp. of Pls.' Cross-Mot., ECF No. 38 [hereinafter Pls.' Reply].

## II.    LEGAL STANDARD

"FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the" agency shows that the "records are covered by" a statutory exemption, *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted), and that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I).  The agency may carry its burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (cleaned up).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (cleaned up).

## III.   DISCUSSION

### A.    FOIA Exemption 5

FOIA Exemption 5 allows an agency to withhold from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The exemption thus provides the agency with the same privilege protections it would ordinarily have in civil discovery, including "the deliberative process privilege."  *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898

(D.C. Cir. 2015). The deliberative process privilege "rests on the [] realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8– 9 (2001). To qualify for the privilege, the withheld information must be "both pre-decisional and deliberative." *Abtew*, 808 F.3d at 898. "A document is predecisional if it precedes, in temporal sequence, the decision to which it relates." *Id.* (cleaned up). "And a document is deliberative if it is a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Id.* at 899 (cleaned up).

"As a general matter, 'drafts' of documents are exempt from disclosure under the deliberative process privilege." *Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009) (collecting cases). The Draft Handbook is no exception. It is predecisional: the document was not finalized until August 2018, over one year after the Draft was prepared. *See* Second Pineiro Decl. ¶ 10. And it is deliberative. As a draft, it represents a preliminary step along the road to the agency's final guidance regarding criminal street gang investigations. The draft reflects "editorial judgments," including redline edits and comments in the margins, the disclosure of which "would stifle the . . . candid exchange of ideas necessary to produce good . . . work." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987); *see also* First Pineiro Decl. ¶ 15. Moreover, the document was heavily revised between draft and final: the final version of the Handbook contains approximately 25% less content than the draft, and an appendix was replaced in full. Second Pineiro Decl. ¶ 10. Such changes between draft and final, the D.C. Circuit has held, "could lead to confusion of the public." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (affirming the withholding of a draft manuscript where the draft contained twenty pages of material that had been deleted in the final version, and where the agency had not

5

yet taken a position as to the deleted materials); *see also* First Pineiro Decl. ¶ 19.

Plaintiffs do not dispute the general principle that drafts of this nature are appropriately withheld under Exemption 5.  Instead, they assert that the Draft Handbook has lost its predecisional character because it was cited as one of two sources in the 12-page training document that ICE prepared regarding gang membership identification and produced to Plaintiffs, thereby rendering the entire Handbook "working law."  *See* Pls.' Mem. at 6.  Under the "working law" exception, a document that "is predecisional at the time it is prepared" can "lose [its predecisional] status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 10 (D.C. Cir. 2014) (characterizing this variant of the working law exception as "waiver by public adoption" (cleaned up)).  This exception embodies the principle that "an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'"  *Coastal States*, 617 F.2d at 867; *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152–53 (1975).

ICE acknowledges that FOIA Exemption 5 "may not be applicable to documents marked draft if the contents of those records were adopted into a final agency policy," but insists "that is not the case here."  Second Pineiro Decl. ¶ 6.  That is because, according to Pineiro, ICE has "released any and all information that was incorporated into the 12-page training document." *Id.* ¶ 9.  Pineiro recounts that the agency "conducted a side-by-side review of the 48-page draft Handbook, . . . with the 12-page training document" and "released all information that was adopted from the 48-page draft Handbook into the 12-page training document." *Id.* ¶ 6.  "The remaining

content found within the Draft Handbook," Pineiro concludes "was not incorporated into the 12-page training document." *Id.* ¶ 9.  Pineiro's declaration adequately shows that none of the withheld portions of the Draft Handbook have been informally or formally adopted as working law, or final agency policy.

Plaintiffs' two counterarguments are unpersuasive.  First, Plaintiffs assert that "it would be unusual and atypical, to say the least, for one section of a Handbook . . . to reflect agency policy and other sections to not," and that "[i]n the face of record evidence and the agency's concession that a portion of the Handbook indisputably had operative effect, the burden was on ICE to provide a sufficiently detailed, logical explanation for why that portion of the Handbook was unique from the remainder."  Pls.' Reply at 6.  But ICE *has* given such an explanation for why the unredacted portions of the Draft Handbook are "unique":  they were the only portions used in the 12-page training document.   *See* Second Pineiro Decl. ¶ 9 (explaining that "[t]he citation of the Draft Handbook as one of the sources of the training document is a reference to the fact that certain aspects of the Draft Handbook are incorporated into the training, not that the entire Draft Handbook served as the basis for the training document").  No additional explanation is needed.

Second, Plaintiffs assert that ICE has improperly shifted the burden on Plaintiffs by suggesting that "because Plaintiffs have not identified other trainings utilizing the redacted portions of the Handbook, its reliance on [E]xemption 5 for those portions of the Handbook is justified."  Pls.' Reply at 5–6.  Plaintiffs appear to suggest that it is an agency's burden of proving that no portion of a withheld document has been adopted as its working law regardless of whether a plaintiff has alleged any such adoption.  *See* Pls.' Reply at 5–6.  But an agency "does not carry the burden of proving that each withheld document was not adopted formally or informally."  *See Heffernan v. Azar*, 317 F. Supp. 3d 94, 122 (D.D.C. 2018) (quoting *Sec. Fin. Life Ins. Co. v. Dep't*

*of Treasury,* No. 03-cv-102 (SBC), 2005 WL 839543, at *7 (D.D.C. Apr. 12, 2005)); *see also Elec. Frontier Found.*, 739 F.3d at 10 (explaining that "in order for the [waiver-by-adoption] exception to apply, it must be evident that 'the reasoning in the report is adopted by the agency as its reasoning" (cleaned up) (quoting *Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975))); *Vento v. IRS*, 714 F. Supp. 2d 137, 154 (D.D.C. 2010). Rather, to show that a document does not reflect the agency's working law, an agency need only present to the court "the function and significance of the document(s) in the agency's decisionmaking process," "the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s)," and "the positions in the chain of command of the parties to the documents." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982) (cleaned up). ICE has met its burden here. The agency, by way of Pineiro's declarations, has demonstrated that the Draft Handbook reflects "non-final agency decisions pertaining to the conduct of . . . criminal street gang investigations," that the Handbook was finalized a year after the draft was prepared and was modified substantially, and that any portions of the Draft that were utilized in other trainings and operational memoranda previously disclosed in the course of this litigation have been released. *See* First Pineiro Decl. ¶¶ 9, 11, 13–15, 18; Second Pineiro Decl. ¶¶ 9–10. The author of the Draft is identified as Derek N. Benner, Acting Executive Associate Director of Homeland Security Investigations, *see* Draft Handbook at 2, and the document contains edits and recommendations from the Office of the Principal Legal Advisor, *see* First Pineiro Decl. ¶ 18. ICE arguably could have provided more detail about "the nature of the decisionmaking authority vested in" the Draft Handbook's author and the "chain of command" of the parties to the document, but Pineiro's declaration clearly demonstrates that the withheld information contains only "the ideas and theories which go into the making of the law and not the law itself." *Arthur Andersen*, 679 F.2d at 258 (cleaned up); *see also*

8

*Senate of the Com. of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 586

(D.C. Cir. 1987) (characterizing these two elements as "two factors that can assist the court in

determining whether [the deliberative process] privilege is available").

In sum, ICE has met its burden of showing that the withheld portions of the Draft Handbook

qualify for the deliberative process privilege and are properly exempt under Exemption 5.[2]

### B.      Foreseeable Harm

Plaintiffs separately contend that even if Exemption 5 applies on its face, ICE has not met

its "heightened" burden under the FOIA Improvement Act, which provides that "[a]n agency shall

. . . withhold information under this section only if . . . the agency reasonably foresees that

disclosure would harm an interest protected by" one of the nine FOIA exemptions.  *See* Pls.' Mem.

at 10 (quoting 5 U.S.C. § 552(a)(8)(A)).  To satisfy its burden under the FOIA Improvement Act,

"an agency must 'identify specific harms to the relevant protected interests that it can reasonably

foresee would actually ensue from disclosure of the withheld materials' and 'connect the harms in

a meaningful way to the information withheld.'"  *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp.

3d 240, 259 (D.D.C. 2020) (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border

Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019)).

According to Pineiro, ICE reasonably foresees that disclosure of the withheld portions of

the Draft Handbook would cause the chilling of agency deliberations.[3]  Pineiro explains that the

---

[2] In light of the court's conclusion, it need not reach ICE's additional argument that its internal use of the Draft Handbook in its training does not amount to a "public adoption" under the working law exception.  *See* Def.'s Reply at 3–4.

[3] Pineiro also notes that "[d]rafts sometimes contain inaccurate or incomplete information," and posits that if "unfinalized information regarding agency policies and law enforcement actions or techniques were released, the public could potentially become confused regarding ICE's mission and law enforcement activities," First Pineiro Decl. ¶ 19; *see also* Second Pineiro Decl. ¶ 15.  The court doubts whether such non-particularized speculation that the public "could" be confused by the release of draft agency documents is sufficient to satisfy ICE's burden under the FOIA Improvement Act; however, it need not decide this question, as ICE's concern about the chilling effect of release independently justifies its withholdings.

Draft Handbook "contains non-final agency decisions pertaining to the conduct of . . . criminal street gang investigations . . . , options being considered in terms of suggested edits, and recommendations in terms of the Office of the Principal Legal Advisor's . . . suggested edits." First Pineiro Decl. ¶ 18.  He elaborates that "the draft Handbook contains red-lined edits that have not yet been accepted for incorporation in the finalized document, and suggestions and comments on the margins of some pages," First Pineiro Decl. ¶ 19, and that "there are significant differences between the Draft Handbook and the final signed handbook," Second Pineiro Decl. ¶ 10.  "The release of this non-final internal information," Pineiro opines, "would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel," which, in turn, "would result in a chilling effect on intra- and inter-agency communications."  First Pineiro Decl. ¶ 19.

Plaintiffs dismiss Pineiro's declarations as mere "boiler plate language," Pls.' Mem. at 11 (cleaned up), but the declarations are at least as detailed as those in *Machado Amadis v. United States Dep't of State*, in which the D.C. Circuit found that the defendant agency had satisfactorily established that disclosure of deliberative documents would cause reasonably foreseeable harm to an Exemption 5-protected interest, *see* 971 F.3d 364, 370–71 (D.C. Cir. 2020).  In that case, a FOIA plaintiff had requested documents from the Department of Justice's Office of Information Policy ("OIP") pertaining to his own FOIA appeal. *Id.* at 367.  In response, OIP produced "Blitz Forms," which are the documents OIP uses to adjudicate FOIA appeals, but it redacted portions of the forms under the deliberative process privilege of FOIA Exemption 5. *Id.* at 370.  OIP explained in its supporting affidavits that the redacted material revealed the "line attorneys' evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decisionmaking" and that disclosure of this analysis "would discourage line attorneys from

candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright

internal discussions necessary for efficient and proper adjudication of administrative appeals." *Id.*

at 370–71 (cleaned up).  The D.C. Circuit affirmed the deliberative process redactions, finding that

"OIP specifically focused on 'the information at issue' in the Blitz Forms under review" and

properly "concluded that disclosure of that information 'would' chill future internal discussions."

*Id.* at 371.

Pineiro's declarations, like those in *Machado Amadis*, "focus[] on the information at

issue"—i.e., non-final information pertaining to the conduct of criminal street gang

investigations—and "conclude[] that disclosure of that information 'would' chill future internal

discussions." *Id.*  Contrary to Plaintiffs' suggestions, *see* Pls.' Mem. at 11, ICE does not "simply

rely on 'generalized' assertions that disclosure 'could' chill deliberations," *Machado Amadis*, 971

F.3d at 371.  Rather, ICE has specifically explained that disclosure of the withheld information,

which includes editorial judgments and significant changes between the draft and final versions,

"*would* discourage the expression of candid opinions" and "*would* result in a chilling effect on

intra- and inter-agency communications."  First Pineiro Decl. ¶ 19 (emphasis added).  Plaintiffs

undoubtedly would prefer ICE to have provided more specifics, but "[t]he degree of detail

necessary to substantiate a claim of foreseeable harm is context-specific."  *Rosenburg*, 442

F. Supp. 3d at 259.  Given the preliminary nature of the entire Draft Handbook, the chilling effect

of public disclosure is in some sense self-evident, and it is difficult to see how ICE could have

provided any additional explanation as to how disclosure of the draft will cause future agency

communications to be chilled.[4]  Thus, ICE has met its burden under 5 U.S.C. § 552(a)(8)(A).

---

[4] In contrast, ICE's disclosure of the portions of the Draft Handbook that were utilized in its gang training is not likely to chill future communications because "agency employees will generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency." *Sears*, 421 U.S. at 161.

### C.    Segregability

Finally, Plaintiffs assert that "ICE has not released all segregable non-exempt material." Pls.' Mem. at 12 (cleaned up).  "[E]ven when FOIA exemptions apply," an agency still must disclose "any reasonably segregable portion of a record" unless the non-exempt portion is "inextricably intertwined with exempt portions." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (cleaned up).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency must show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117.

Here, Pineiro asserts that "line-by-line reviews were conducted by multiple ICE employees and, in connection with that process, the agency made two supplemental re-releases of the Draft Handbook to provide additional, previously redacted information after determining that nonexempt information could be meaningfully segregated from those prior redactions."  Second Pineiro Decl. ¶ 17.  As a result of these multiple reviews, Pineiro concludes, "all information not exempted from disclosure pursuant to the FOIA exemptions" and not otherwise "inextricably intertwined" with properly exempt information was released. *Id.* ¶¶ 17–18.

ICE's segregability analysis reflects the two "factors that [the D.C. Circuit has] previously deemed sufficient" for an agency to meet its segregability obligation, "i.e., the description of the document . . . and the agency's declaration that it released all segregable material." *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (finding that the agency had adequately established that the

withheld documents could not be segregated based on a *Vaughn* index describing the documents and the affidavit of an agency attorney stating that "she personally conducted a line-by-line review of each document withheld in full and determined that 'no documents contained releasable information which could be reasonably segregated from the nonreleasable portions'").  ICE has therefore met its burden of "show[ing] with 'reasonable specificity' why the document[] cannot be further segregated."  *Armstrong*, 97 F.3d at 578.

Plaintiffs resist this conclusion, invoking *Stolt-Nielsen Transportation Group Ltd. v. United States* for the proposition that "a conclusory affidavit by [an agency] official declaring that [an agency employee] had 'reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act'" is insufficient for an agency to meet its segregability burden.  *See* Pls.' Mem. at 13 (quoting 534 F.3d 728, 734 (D.C. Cir. 2008)).  In that case, however, only a portion of the withheld documents appeared to be subject to the relevant exemption and the agency had withheld the remainder simply because it believed it was not "helpful."  *See Stolt-Nielsen*, 534 F.3d at 733–34.  In contrast, here, the *entire* Draft Handbook (with the exception of the portions that have already been disclosed) is predecisional and deliberative and therefore subject to Exemption 5.  *See Coastal States,* 617 F.2d at 866 (explaining that Exemption 5 protects, among other things, "draft documents"); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014) (holding that a predecisional draft "may not be dissected" because the composition of the draft itself "is part of the deliberative process"); *Marzen v. Dep't of Health & Human Servs.*, 825 F.2d 1148, 1155 (7th Cir. 1987) (affirming the withholding of a draft in full because Exemption 5 "protects not only the opinions, comments and recommendations in the draft, but also the process itself"); *see also Goodrich Corp.*, 593 F. Supp. 2d at 189 (explaining that "[a]s a general matter, 'drafts' of documents are exempt from disclosure

13

under the deliberative process privilege" and collecting cases supporting this observation). The agency conducted multiple line-by-line reviews of the Draft Handbook, released the portions of the document that had been incorporated in training and operational documents (including the 12-page training document), and concluded that no additional information was subject to disclosure. *See* First Pineiro Decl. ¶¶ 11, 27–28; Second Pineiro Decl. ¶¶ 8, 17–18. No additional segregability analysis was required.

## IV.    CONCLUSION

For the reasons set forth above, the court grants Defendant's Motion for Summary Judgment, ECF No. 32, and denies Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 34. A separate final order accompanies this Memorandum Opinion.

Dated:  September 29, 2020

Amit P. Mehta
United States District Court Judge